WILLIAM B. GREENOUGH, Atty. Gen., *ex rel. vs.* BOARD OF
CANVASSERS OF CENTRAL FALLS *et als.*

MARCH 15, 1912.

PRESENT: Dubois, C. J., Johnson, Parkhurst and Sweetland, JJ.

(1) *Taxation. Assessment. Notice. Defects.*

A resolution of a city council, passed May 1, ordered the tax assessors to
assess a tax on or before August 31.   The assessors fixed June 6, at 5 o'clock
P. M., as the time for the assessment of such tax and gave notice to bring
in accounts of ratable estates owned on the 6th day of June, at 5 o'clock
P. M., and that for the purpose of receiving such accounts the board would
be in session daily from the 6th to the 10th days of June, from 9.30 A. M.,
to 12 o'clock noon.

*Held,* that the assessors might select any day not later than August 31,
for the assessment of the tax, provided it did not prevent the giving of the
statutory three weeks notice under Gen. Laws, cap. 58, § 6.

(2) *Taxation. Notice. Defects.*

*Held,* further, that the notice was faulty in that no person could know in the
forenoon or at noon on June 6, what property he would own at 5 P. M.,
and so any statements received on that day between 9.30 and 12 noon
were valueless.

*Held,* further, that as it did not appear that any statements were then re-
ceived or that any person was misled and there was ample time provided
on the other days, for the reception of accounts, in a proceeding brought
by the attorney-general for the purpose of vacating the assessment, so
as to prevent the placing of certain names assessed for personal property
upon the voting-lists, this defect would not avail the petitioner.

(3) *Taxation. Discrimination. Mandamus.*

Discrimination by a board of tax assessors in favor of certain tax payers,
is no ground for relief in a proceeding brought by the attorney-general
for the purpose of vacating the assessment so as to prevent the placing of
certain names assessed for personal property upon the voting lists, the
persons affected not being parties to the proceeding.

(4) *Taxation. Mandamus.*

The proper remedy against assessors who neglect or refuse to assess taxable
persons or property is by mandamus to compel them to do so, but the pe-
tition for such writ must be brought against the assessors before the assess-
ment roll has passed from their possession.

(5) *Taxation. Assessment.*

The action of a board of tax assessors in assessing 120 persons for personal
property in the sum of $200 each, by a vote of two assessors to one, is
not the action of a majority, but that of the full board, the vote of the
majority being decisive.

(6)  *Taxation.  Assessment.  Review.*

Gen. Laws, cap. 58, § 3, provides that "all property liable to taxation shall be assessed at its full and fair cash value." Cap. 58, § 4, provides that "the assessors shall assess and apportion any tax on the inhabitants of the town and the ratable property therein, at the time ordered by the town."

*Held,* that it was the duty of the assessors to assess every person and all property liable to taxation and they were not excused from this duty in case no account was rendered, and therefore, the assessment roll still being in their possession, but after the time limited for filing accounts had expired, where the assessors accepted a list of names and assessed the persons each for the sum of $200, their action is not subject to review in a proceeding brought by the attorney-general for the purpose of vacating the assessment, so as to prevent the placing of certain names assessed for personal property upon the voting-lists.

CERTIORARI.    Petition dismissed.

DUBOIS, C. J.    This is a petition for a writ of certiorari and reads as follows: "William B. Greenough, Attorney-General of the State of Rhode Island, in behalf of the taxpayers and inhabitants of the city of Central Falls, in the County of Providence, in the State of Rhode Island, on the relation of Thomas Riley, Jr., of said Central Falls, respectfully shows unto this Court:

"1——That Lewis M. Smith, Adolph Messier, Silas P. Cumming, Peter Clare, and Henry Senior are the members of and compose the Board of Aldermen which is the Board of Canvassers of said Central Falls; that David Bloomfield, James J. Kelly and Joseph J. Chamberlain are the members of and compose the Board of Tax Assessors of said Central Falls, and that Charles A. Reynolds is the City Treasurer and Collector of Taxes of said Central Falls, and that Charles D. Wood is assistant City Treasurer and assistant Collector of Taxes of said Central Falls.

"2——That Section 2 of ARTICLE II of the Constitution of the State of Rhode Island, as amended, provides as follows:

" 'Every male citizen of the United States of the age of twenty-one years——————shall have the right to vote in the election of all civil officers and on all questions in all legally organized town or ward meetings: *Provided,*

that no person shall at any time be allowed to vote in the election of the city council of any city, or upon any proposition to impose a tax or for the expenditure of money in any town or city, unless he shall within the year next preceding have paid a tax assessed upon his property therein, valued at least at one hundred and thirty-four dollars.'

"3——That Chapters 56, 57, and 58 of the General Laws relate to taxation and the levy and collection of taxes; Section 10 of Chapter 57 contains a description of the property known as Personal Property, to wit:

" 'Section 10. Personal property, for the purposes of taxation, shall be deemed to include all goods, chattels, debts due from solvent persons, money and effects, wherever they may be, all ships or vessels, at home or abroad, all stocks and securities, shares in any bank or banking-association, in any turnpike, bridge, or other corporation, within or without this state, except such as are exempt from taxation by the laws of the United States or of this state.'

"4——Section 6 of Chapter 58 requires the Assessors of Taxes to issue a notice for all persons to bring in an 'account' of their ratable estate, to wit:

" 'Such notice shall require every person and body-corporate liable to taxation to bring in to the assessors a true and exact account of all his ratable estate, describing and specifying the value of every parcel of his real and personal estate, at such time as they may prescribe.' And, in every instance, in mentioning personal property in said chapters of the General Laws, such property is designated in detail by the names of machinery in manufactories, fixtures, tools, machinery, stock in livery stables, live-stock, farming tools, goods, wares, merchandise, and other stock in trade, etc.

"5——Section 8 of Chapter 58 requires the assessors to make a list of all the ratable estate, containing the true, full and fair cash value of the same, placing the real and personal estate in separate columns, and, also, distinguishing

those who give in an account from those who do not. And Section 20 of said chapter requires the assessors to date, sign and deposit said lists in the office of the town clerk. And Section 21 of said chapter requires the town clerk to forthwith make a copy of the same and deliver it to the town treasurer, and Section 22 of said chapter provides that whenever any town shall elect its town treasurer, collector of taxes for such town, the warrant for the collection of taxes shall be issued to the town treasurer by the town clerk. And Section 19 of Chap. 60 of the General Laws, provides for the distraint of personal property, while Sections 21 et seq., of said Chapter 60, provide for the levy upon, advertisement and sale of such distrained personal property.

"6——And your relator further shows, that the City Council of said Central Falls, by a resolution, approved May 2, A. D. 1911, ordered the assessment and collection of a tax upon the real and personal estate taxable by the city, at the rate of one dollar and fifty cents on each one hundred dollars of the value thereof; and that by said resolution the Board of Assessors of Taxes were ordered to assess and apportion the tax provided for in said resolution, on the inhabitants and ratable property in said city on or before the 31st day of August, A. D. 1911, conformably to law, a copy of said resolution being herewith filed, marked, Relator's 'Exhibit No. 1.'

"7——And your relator further shows that said board of assessors of taxes published a notice reciting that the city council of Central Falls, by resolution approved the 2nd day of May, A. D. 1911, ordered the assessment and apportionment of a tax on the real and personal 'estates' of said city which was to be assessed and apportioned *on or before* the 31st day of August, A. D. 1911, and, by the same notice, taxpayers were required to bring in an account of their ratable estates owned by them on the 6th day of June, A. D. 1911, at 5 o'clock P. M., but, your relator shows, that said notice proceeds further to say, 'For the purpose of receiving such accounts,' 'the Board of Assessors' will

be in session at the City Hall in said 'City' daily from the 6th to the 10th days of June, A. D. 1911, inclusive, 'from 9.30 A. M. to 12 o'clock; Noon.' And said notice further states that, 'The said tax as ordered by the city council of the City of Central Falls, will be assessed Tuesday, June 6th, A. D. 1911, at 5 o'clock P. M., and all real estate will be taxed to the persons or bodies corporate in whose name it stands of record at that time.' A copy of said notice being herewith filed, marked, Relator's 'Exhibit No. 2.'

"Your relator therefore shows, that no tax was assessed and apportioned on the inhabitants of said city and on the ratable estates therein, at the time ordered by the City Council of Central Falls, and relator avers that said board of assessors of taxes were wholly without jurisdiction to assess and apportion any tax on the inhabitants of said city and on the ratable estates therein, on the 6th day of June, A. D. 1911, and that in assessing and apportioning said tax or any tax at that time said assessors were wholly without authority, and that the same was assessed and apportioned without warrant of law, and that the same is wholly illegal and void.

"And your relator shows that said assessment was made before the time limited in which to bring in said accounts, and that said assessment is wholly illegal and void.

"8——And your relator shows that the tax for the year 1911 in said Central Falls was assessed on the, to wit, the 6th day of June, A. D. 1911, at 5 o'clock P. M., and that the time limited in which all persons and bodies corporate could bring in an account of their ratable estates to said board of assessors was the, to wit, from the 6th to the 10th day of June, A. D. 1911, inclusive; and your relator avers that after said 10th day of June, A. D. 1911, to wit, on or about the 15th day of June, A. D. 1911, certain persons appeared before said board of assessors and requested that they be assessed for personal property in the year 1911; and your relator avers and shows that said persons

were then and there told by said board of assessors that they were too late in bringing in their accounts to said board, and that they could not be assessed for personal property in said year; yet, your relator avers and shows that a long time after the time limited in which accounts could be brought into said board of assessors, and a long time after said persons were told by said board of assessors that they were too late in bringing in their said accounts, a majority of said board against the objection and over the protest of the minority of said board, on the, to wit, the 14th day of July, A. D. 1911, accepted from a person not a member of said board, a list of names, to wit, the names of one hundred and twenty (120) persons which names the majority of said board of assessors of taxes placed upon the tax roll of said Central Falls, as each being assessed in the year 1911, in the exact sum of two hundred dollars, each, with no description or specification of the personal property for which each of said persons is taxed, nor the nature or kind thereof nor where the same is located; and your relator avers that the personal property for which each of these persons is pretended to be assessed cannot be identified so that a levy, advertisement and sale of the same may be made if the tax assessed against the same is not paid.   A copy of said list of names being herewith filed, marked, Relator's 'Exhibit No. 3.'

"9——And your relator further shows that in the year 1911, said board of tax assessors pretended to assess for personal property in said Central Falls, a large number of other persons, to wit, about three hundred and twenty-eight (328) persons, each of whom is assessed for the exact sum of two hundred dollars, without in any manner describing or specifying the personal property for which each of said persons is pretended to be assessed, nor stating the kind or nature thereof or where the same is located.   And your relator avers and shows that the placing of such a large number of names on said tax roll as personal property taxpayers was not a bona fide assessment, but was done

simply for the purpose of enabling said persons to vote in caucuses for the nomination of candidates for the city council in Central Falls and for the purpose of enabling said persons to vote in the election of said city council upon the same footing as bona fide taxpayers. And said assessment is illegal and void. A list of the persons thus taxed is herewith filed, marked, Relator's 'Exhibit No. 4.'

"10——And your relator further shows that in the year 1911, said board of assessors of taxes pretended to assess for personal property in said Central Falls another large number of persons, to wit, about one hundred and thirty-eight (138) persons, each of whom is assessed for different amounts in excess of the sum of two hundred dollars, without describing or specifying the personal property for which each of these persons is pretended to be assessed, or that it is of any of the kinds of property mentioned in the General Laws, which provides for the taxing of certain personalty. And said assessment is illegal and void. A list of said persons being herewith filed, marked Relator's 'Exhibit No. 5.'

"11——And your relator further shows that said board of assessors of taxes have completed said alleged assessment, and have deposited the same in the office of the City Clerk in said Central Falls, and said city clerk has sent to the Board of Aldermen of said Central Falls, sitting as a Board of Canvassers in said city, lists of the names of said persons so illegally assessed for personal property in said city, and said Board of Canvassers, on Tuesday, September 5, A. D. 1911, instant, notwithstanding a protest in writing filed with them before said action, placed said names on said voting lists of said Central Falls, in accordance with the provisions of Section 16 of Chapter 7, and of Section 1 of Chapter 8, respectively, of the General Laws, as amended by Sections 1 et seq., of Chapter 640, Public Laws of August, A. D. 1910. And the action of said Board of Canvassers is illegal and void. A copy of said protest is herewith filed, marked, Relator's 'Exhibit No. 6.'

"All of which acts of said assessors of taxes and of said Board of Canvassers and the proceedings of said boards are recorded and fully appear in the records to be adduced and exhibited herein.

"And your relator represents and shows that said assessors of taxes had no jurisdiction in assessing said taxes in said Central Falls; and that they had no jurisdiction to assess said personal property taxes, and exceeded their jurisdiction therein, and their acts in making said assessment of the same and in relation to said assessment and the records thereof are erroneous and illegal in the several particulars and for the several causes which are recited and annexed to this petition and made a part hereof upon which. your relator will rely for its support. And said board of canvassers had no jurisdiction of the names of said persons named as personal property taxpayers, and no jurisdiction to place the names of said persons upon said voting lists as personal property voters or as persons who may become personal property voters, and the records thereof are erroneous and illegal in the several particulars and for the several causes which are recited and annexed to this petition, also, and made a part hereof, and upon which your relator will rely for its support.

"Wherefore your relator prays this court will issue its writ of Certiorari ordering said Assessors of Taxes and the said Board of Canvassers to certify their records relating to the assessing of said taxes and to the assessing of said taxes for personal property and relating to the placing of the names of said persons named in relator's exhibits Nos. 3, 4, & 5, on the voting lists of said Central Falls as personal property voters, also, to the Collector of Taxes and to the Deputy Collector of taxes of said city to certify the tax roll of said city, that said records and said tax roll may be presented to this court, to the end that the same, or so much thereof as may be illegal may be quashed.

"May it please this Court to issue a citation to said Assessors of Taxes and to said Board of Canvassers, and to

the Collector of Taxes and to the Deputy Collector of Taxes, ordering and commanding them to be and appear before this court and show cause if any they have why said writ shall not issue as prayed for.

"WILLIAM B. GREENOUGH,

"*Attorney-General.*"

"CAUSES OF ERROR.

"1——Because it does not appear on said assessment roll or records that the persons who have been assessed for personal property in said Central Falls in the year 1911, by the Assessors of Taxes in said city, are possessed of any personal property.

"2——Because said records of said Assessors of Taxes do not show the nature, kind, description or location of the Personal Property assumed to be assessed by said assessors to said persons.

"3——Because it does not appear of record aforesaid in what the personal property assessed against said persons consists, or that it is of any of the kinds of personal property enumerated in Section 10 of Chapter 57 of the General Laws. And the Collector of Taxes has no method of knowing upon what property to distrain or upon what property to levy and sell as assessed personal property for the satisfaction of the tax so assessed against said personal property in the event of said tax not being paid.

"4——Because it does not appear on said assessment roll that the property for which the persons aforesaid are pretended to be assessed is of any of the kinds of personal property made taxable by law, or that said personal property is not exempt from taxation.

"5——Because said assessment roll fails to show that the assessment was limited to the kinds of property mentioned in the General Laws, which provides for the taxing of certain personalty.

"6——Because in the assessment of the real estate belong-

ing to the citizens and bodies corporate of said city, said assessors have described and located the same, but, have not described, designated or located the personal property for which the persons aforesaid are assumed to be assessed, and, in said assessment, have discriminated in this, that the Collector of Taxes will be able to levy on and sell said real estate for the non-payment of the tax assessed against the same, but, will not be able to distrain, levy on and sell said personal property for the non-payment of the tax assessed against the same, and this is in effect compelling the real estate taxpayer to pay money without due process of law.

"7——Because in assessing said personal property taxes said assessors have discriminated in this; that in assessing personal property taxes against the persons whose names appear on your relator's several exhibits, said assessors have failed to designate on said assessment roll that the tax assessed against said persons was limited to the kinds of property mentioned in the General Laws, which provides for the taxing of certain personalty while on said assessment roll, said assessors have assessed a tax on personal property against other persons in said city, and have on said assessment rolls designated the personal property for which each of said other persons is taxed.

"8——Because said tax was not assessed and apportioned on the inhabitants of said city and on the ratable property therein at the time ordered by the city council of the city of Central Falls.

"9——Because no tax was assessed and apportioned on the inhabitants of said city and on the ratable property therein, at the time ordered by the city council of Central Falls.

"10——Because said assessors of taxes had no authority to assess and apportion a tax on the inhabitants of said city and on the ratable property therein, on the 6th day of June, A. D. 1911, at 5 o'clock P. M.

"11——Because the notice published by said assessors before assessing and apportioning said tax does not comply

with the law, in this, that it notifies persons to bring in an account of their ratable estates after instead of before the assessing of the same.

"12——Because said assessment having been made before the time for bringing in the accounts required by the assessors had expired, there is no appeal left to those who may be dissatisfied with said assessment.

"13——Because said assessors had no authority to accept from any person a list of names of persons to be assessed, and to assess said persons in a block, without describing and specifying the nature, kind and location of the personal property for which each of said persons was assessed, and that it was of the kind made taxable by law.

"14——Because said assessors had no authority to accept on the, to wit, the 14th day of July, A. D. 1911, a list of names of persons to be assessed, and to assess said persons on that date for personal property.

"15——Because the time limited in which persons and bodies corporate could bring in an account of their ratable estate to said assessors being the, to wit, the 10th day of June, A. D. 1911, said assessors were without authority to accept either the names of said persons or the accounts of said persons on the, to wit, the 14th day of July, A. D. 1911.

"16——Because said assessment being illegal and void, said Board of Canvassers had no jurisdiction to place the names of any of said persons upon the voting lists of said Central Falls as persons entitled to vote upon the payment of a personal property tax.

> "THOMAS RILEY, JR.,
> "H. J. CARROLL,
> "*Solicitors for Relators.*"

The respondents having been duly cited to appear and show cause why the prayer of the petition should not be granted appeared and filed the following motion to dismiss the petition:

"Now come the said respondents in said cause and move that said application for writ of certiorari may be dismissed:

"*First:*    Because it does not appear that the tax roll as made up by said assessors violated any provision of the law in such cases made and provided.

"*Second:*    Because it does not appear that the relator was either injured, misled or deceived by the assessment roll as made up.

"*Third:*    Because it appears that said assessors properly assessed said tax upon the 6th day of June, 1911.

"*Fourth:*    Because it appears that the notice set up by said assessors for bringing in statements of personal estate complied with the provisions of the law.

"*Fifth:*    Because it does not appear that the relator or any other person was misled or deceived by the said notice.

"*Sixth:*    Because it does not appear in and by said application, particularly in the allegations contained in the ninth and tenth paragraphs of said application, that said persons whose names are set out in Exhibits Nos. 4 and 5 did not at the time they were assessed for the sum of $200.00, have and possess such amount of ratable personal estate.

"*Seventh:*    Because it does not appear that the said Board of Assessors in taxing said persons whose names are referred to in the ninth and tenth paragraphs of said application for said writ exceeded their jurisdiction.

"*Eighth:*    Because it appears in and by the eighth paragraph of said application that said Board, in placing the names of said one hundred and twenty persons mentioned in said eighth paragraph had sole jurisdiction to determine the questions of fact therein involved.

"*Ninth:*    Because it does not appear from any allegation in said application, and particularly in and by the allegations of said eighth paragraph of said application, that said one hundred and twenty persons set out in said eighth paragraph of said bill did not, at said time, own and possess $200.00 of ratable personal estate.

"*Tenth:* Because said Board of Canvassers in performing. the several acts set out in the eleventh paragraph of said application acted in a ministerial and not in a judicial capacity."

Petitioner's exhibit No. 1 contains the following copy of "A resolution providing for the assessment and collection of a tax for the year 1911."

"(Passed May 1, 1911.  Approved May 2, 1911.)

"*Be it resolved by the City Council of the City of Central Falls, as follows:*

"Section 1.   The city council of the city of Central Falls. hereby orders the assessment and collection of a tax upon the real and personal estate taxable by the city, at the rate of one dollar and fifty cents on each one hundred dollars of the value thereof, for the payment of the appropriations made by the city council, the ordinary and extraordinary expenses of the city, the sinking funds, the orders of the mayor, payments authorized by the resolutions and ordinances of the city council, payments otherwise authorized by law, and the payment of the state tax which is hereby assumed.

"Sec. 2.   The board of assessors of taxes is hereby ordered to assess and apportion the tax provided for in the preceding section of this resolution, on the inhabitants and ratable property in the city on or before the thirty-first day of August, A. D. 1911, conformably to law.

"Sec. 3.   The assessments provided for in Sections 1 and 2 of this resolution shall be committed to the collector of taxes on or before the first day of October next ensuing, and the several taxes thereon shall be payable to said collector of taxes on or before the thirty-first day of October, A. D. 1911, and shall be payable into the city treasury immediately upon receipt thereof by the collector of taxes.

"Sec. 4.   On all taxes assessed as provided for in this. resolution, and remaining unpaid on the thirty-first day of October next, interest shall accrue and be payable to said. collector of taxes at the rate of eight per centum per annum.

from and after the said thirty-first day of October, and all interest in addition to the taxes aforesaid shall be payable into the city treasury immediately after the receipt thereof by said collector of taxes.

"Sec. 5.   This resolution shall take effect immediately."

And the petitioner's exhibit No. 2 contains a copy of the Assessors' Notice, as follows:

## "CITY OF CENTRAL FALLS.

---

### " CITY TAX.

### "ASSESSORS' NOTICE.

---

" Whereas, The City Council of. the City of Central Falls, by resolution approved on the 2nd day of May, 1911, has ordered the assessment and apportionment of a tax on the real and personal estates of said city, of One Dollar and Fifty Cents on each One Hundred Dollars of the valuation thereof, to be assessed and apportioned on or before the 31st day of August, A. D. 1911.   Now, therefore, notice is hereby given that in accordance with said resolution, and in conformity with the law in relation to the assessment of taxes, every person and body corporate liable to taxation is required to bring in to the assessors a true and exact account of all his ratable estate owned on the 6th day of June, A. D. 1911, at 5 o'clock p. m., describing and specifying the value of every parcel of his real and personal estate.   For the purpose of receiving such accounts, the Board of. Assessors will be in session at the City Hall, in said city, daily from the 6th to the 10th days of June, A. D. 1911, inclusive, from 9:30 a. m. to 12 o'clock noon.   Every person bringing in any such account shall make oath before some one of the assessors that the account by him exhibited contains to the best of his knowledge and belief a true and full account and valuation of his ratable estate.   And whoever neglects or refuses

to bring in such account, if overtaxed, shall have no remedy therefor.

"The said tax.as ordered by the City Council of the City of Central Falls, will be assessed Tuesday, June 6th, 1911, at 5 o'clock p. m., and all real estate will be taxed to the persons or bodies corporate in whose name it stands by record at that time.

"The Poll Tax will also be assessed June 6th, 1911.

> "DAVID BLOOMFIELD,
> "JOSEPH J. CHAMBERLAIN,
> "JAMES J. KELLEY,
>
> "*Board of Assessors of Taxes.*

"Central Falls, R. I., May 13, 1911."

As some of the questions submitted for determination in the present petition are substantially similar to, if not identical with, those which have been considered and decided by us, in the opinion heretofore rendered in the case of *William B. Greenough, Atty. Genl. ex rel.* v. *Bd. of Canv. & Reg. of Pawtucket, et als*, 33 R. I. p. 559, they will receive no further consideration at this time. The other questions raised have relation, first: to the power of the Board of Assessors to fix the time that they did, for the assessment of the tax of 1911, viz.: June 6, 1911, at 5 o'clock P. M., under (1) the resolution of the City Council of Central Falls which ordered said assessors to assess said tax on or before August 31st, 1911; second: to the legality of the notice given by the said Board of Assessors for persons to bring in accounts of their ratable estates from June 6 to June 10, 1911; third: to the action of said Board in declining to assess certain persons for personal property on or about the fifteenth day of June, 1911; and fourth: to the legality of the action of said board in assessing certain persons for personal property on or about the fourteenth day of July, 1911.

The petitioner argues that the city council by their resolution limited the time wherein the board of assessors of taxes should assess the tax for the year 1911, to the month

of August of that year. The resolution was passed May 1, 1911, and was approved by the mayor upon the day following, and by its fifth section took effect immediately. Under its terms the taxes therein referred to might be assessed by the board of assessors on the thirty-first day of August if they so elected, which they did not do. They were without authority to select a day for said assessment after August 31st, 1911. As they did not select the day named and could not select a later date, they were forced to select an earlier date. There is nothing in the language of the resolution that limits the board of assessors to select a day in any particular month other than August 31, 1911. Therefore, they had the right to select any day in August, July or June, provided that it was not too early and such as to prevent them from giving the requisite statutory three weeks' notice under Gen. Laws, cap. 58, § 6. The date selected was not faulty in this respect, and no question is made with regard to the publication of the notice. In our opinion, the board of assessors did not err in their selection of June 6, 1911, at 5 o'clock P. M., as the time for the assessment of the said tax.

(2)    The second question has reference to the first day when the board of assessors were to be in session to receive accounts of ratable estates. The information contained in the notice is that the board would receive such accounts daily from the 6th to the 10th days of June, 1911, inclusive, from 9:30 o'clock A. M. to 12 o'clock noon. It is evident that no such account could be received before noon on the 6th day of June, 1911, because it would be impossible for any person to know in the forenoon of or at noon on said day what property he would own at 5 o'clock P. M. of that day. In the case of *Matteson* v. *Warwick & Coventry Water Co.* 28 R. I. at p. 581 we held as follows: "It follows that the time for rendering an account must follow the day and hour established for the valuation and ownership of the ratable estate of the taxpayer in order that he may be able to render a true and exact account thereof as required by statute, and as has been the proper construction of the statute in some of the towns

of the state. Thus to hold, however, is not to hold that taxes assessed and collected under provisions similar to the case at bar have been unlawfully collected. Having been paid without protest or objection in this respect, they must be deemed to have been lawfully collected and the objection waived which might have been successfully interposed against their enforced collection." The notice is faulty in this respect and it follows that any statements that may have been received by said assessors on June 6, 1911, between the hours of 9:30 o'clock A. M. and 12 o'clock noon are valueless. It does not appear, however, that any statements were then received or that any person has been misled by the defect in the notice. There was ample time provided for the reception of said accounts on the other days named, and this proceeding is not brought by any person for the purpose of obtaining relief from a tax illegally assessed against him. The defect in the notice therefore is of no avail to the petitioner. The action of the board in

(3) declining to assess certain persons for personal property on or about June 15, 1911, appears to have been based upon a ruling that it was then too late to bring in accounts of ratable estates to the board. It is true that the time for bringing in such accounts had expired, so that if such accounts were offered by any persons with the expectation of using the same as the basis for relief in case of over-taxation the board advised them properly and the ruling was correct. But the persons affected by the ruling are not parties to this proceeding which is brought for the purpose of causing certain names to be stricken from the assessment roll and not for the purpose of adding any names thereto. It is doubtless offered for the purpose of pointing out an unjust discrimination claimed to have been made by the board against those aspirants for taxation and in favor of certain other persons whose names were placed upon the assessment roll about a

(4) month later. The incident furnishes no ground for relief in the present proceeding. The proper remedy against assessors, who neglect or refuse to assess taxable persons or

property, is by mandamus to compel them to do so. 37 Cyc. 986, e. But the petition for such a writ must be brought against the assessors before the assessment roll has passed from their possession. *Sullivan* v. *Peckham*, 16 R. I. 525.

The fourth and last question to be considered is the one respecting the action of the board of assessors in assessing one hundred and twenty persons for personal property in the sum of two hundred dollars each on the fourteenth day of July, 1911. The statement is found in the eighth paragraph of the petition which recites that this was done by "a majority of the board against the objection and over the protest of the minority of said board." We do not understand from this that the completed assessment roll bearing the names of, and amounts assessed against, the one hundred and twenty persons aforesaid, was not signed by all of the members of the board of assessors. But we infer that the names aforesaid were included in the list by a vote of two assessors to one. It must often happen that questions arising in the course of their duties, in the assessment of taxes, are viewed from different standpoints by the individual members of the board and that there may be frequent disagreements that will necessitate a vote upon the subject thereof, and of necessity the vote of the majority will be decisive in each case, the minority voter usually acquiescing in the result. Such action is not the action of a majority. If two of the three assessors had attempted to act in the absence of the third, such action would constitute an action of the majority. The very fact that the minority member was present and objecting is sufficient to show that the full board was acting upon the matter in question. There is nothing in this phase of the question that calls for further consideration. No claim is made that the assessment roll had passed out of the possession of the assessors at the time of the particular assessment under consideration. In the case of *Sullivan* v. *Peckham, supra,* at p. 526, Durfee, C. J., used the following language: "Our statute, Pub. Stat. R. I. cap. 43, § 3,

expressly declares that 'all property liable to taxation shall be assessed at its full and fair cash value,' and accordingly we think it is the duty of the assessors to tax every citizen rendering account to the assessors, as required, showing such property, unless they believe his account to be erroneous or defective, or unless he is in their judgment unable from infirmity or poverty to pay the tax, and they omit it on that account, under Pub. Stat. R. I. cap. 41, § 2." The learned judge was considering the case of one who had rendered an account and properly limited his decision to the facts of the case. But he called attention to the wording of the Statute which is identical with that of Gen. Laws, 1909, cap. 58, § 3, and the section contains no reference to an account. Moreover, said cap. 58, § 4, provides that "The assessors shall assess and apportion any tax on the inhabitants of the town and the ratable property therein, at the time ordered by the town." Thereunder it is the duty of the assessors to assess every person and all property liable to taxation. They are not excused from the performance of this duty in case no accounts are filed. Nor in case of the filing of accounts are they to be confined or restricted by the accounts rendered. Those are not prescribed as their only sources of information, for Gen. Laws, 1909, cap. 56, § 2, *inter alia*, contains the following provision: "The following property and no other shall be exempt from taxation . . . the estate of any person who in the judgment of the assessors is unable from infirmity or poverty to pay the tax." Such infirm or poor person may have property, may desire to be taxed and may render an account and yet in the judgment of the assessors may be too infirm or too poor to pay the tax, and the judgment of the assessors is made the controlling factor in the premises. Moreover, under said cap. 58, § 4, "If any person shall bring in an account as aforesaid, the assessors shall nevertheless assess such person's ratable estate at what they deem its full and fair cash value." The assessors are invested with power of appraisal which is to supersede, in the first instance, the sworn statement of the person rendering the

account. Much is entrusted to their judgment and discretion. They undoubtedly have the right to consider such information as they may be able to obtain from any available source for the purpose of using their judgment in assessing and apportioning a tax upon the inhabitants of the town and the ratable property therein. And their judgment in the premises can only be reviewed upon a petition for relief from such assessment brought, under the provisions of Gen. Laws, 1909, cap. 58, § 15, by a person who has duly rendered an account. In the circumstances of the case we are of the opinion that the conduct of the assessors in taxing the persons hereinbefore referred to in the amounts mentioned, before the assessment roll had passed out of their possession is not subject to review in this proceeding, and therefore and for the reasons already given, the motion to dismiss the petition is granted.

Petition denied and dismissed.

*Thomas Riley, Jr., Hugh J. Carroll,* for petitioner.
*John N. Butman,* for respondents.
*Edward D. Bassett,* of counsel.